| United States District Court | Southern District of Texas |
|---|---|

| | |
|---|---|
| Kensho Sone, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| *versus* § | Civil Action H-13-2161 |
| § | |
| Harvest Natural Resources, Inc., § | |
| § | |
| Defendant. § | |

## Opinion on Dismissal

1.  *Introduction.*

The People's Republic of China hired a Texas company to search for oil and gas in the South China Sea. For more than forty years, Taiwan and China have disputed who owns the area. A group of Taiwanese residents – who concede that they have no personal interest it – have sued the Texas company for trespassing in their country's waters. They will take nothing.

2.  *Background.*

Since 1996, Harvest Natural Resources, Inc., has owned Crestone Energy Corporation. In 1999, the People's Republic of China awarded Crestone a concession to explore and produce oil and gas in 9,687 square miles of the South China Sea, a prospect known as WAB-21. Through October of 2013, neither Harvest nor Crestone has drilled a well nor recovered oil from the area. In July of 2014, Crestone assigned its interest in China's prospect to a third party. This assignment severed Harvest's only tie to the area, which had been as a shareholder in Crestone.

Since its inception, the government in Taiwan – the former Republic of China – has disputed the People's Republic of China's claims in the South China Sea, including this part. The United States has abstained from these disputes. WAB-21 is near the Spratly Islands in the West Wan'an Bei Basin of the South China Sea – approximately halfway between Malaysia and the Socialist Republic of Vietnam.

Taiwanese residents have sued Harvest for trespassing within 200 nautical miles of its coast. Under current international practices, this area – the exclusive economic zone – has its sub-sea resources presumptively reserved for the adjacent nation.

These complainants do not sue on behalf of their government; their claims are strictly for their own losses. They have demanded $2.9 million – the "book value" of the field – and pleaded no facts about themselves or their interest in this field. In their petition, they exclusively articulate their government's abstract territorial claims attached to a demand for money.

3.  *Trespass.*

In Texas, trespass is an owner's claim for compensation from an entry on his land by another without his consent.[1] Axiomatically, the plaintiff must have a direct interest in the possession of the land to have a claim.[2] A Texan may not, for instance, sue his neighbor for trespassing in a closed state park. That claim belongs solely to the state.

The plaintiffs have said that their government owns part of the area where Crestone was looking for oil. They have not said that they have concessions or licenses for a pecuniary recovery, like fishing – much less that they personally own these waters. They do not represent the government of Taiwan or its people. They have not sued on behalf of their government and concede that they have no private interest in this area. They have no claim for trespass.

In a trespass action, the claimants must join all of the owners.[3] These 100 or so claimants are roughly 1/230,000th of the people of Taiwan. Each of these unrepresented fellow countrymen has an identical claim.

---

[1] Pilcher v. Kirk, 55 Tex. 208, at *5 (Tex. 1881).

[2] Timpson & R. Ry. Co. v. Smith, 165 S.W. 86, 89–90 (Tex. Civ. App. Texarkana 1914).

[3] May v. Slade, 24 Tex. 205, at *3 (1859); Taylor v. Catalon, 166 S.W.2d 102, 105–06 (1942).

4.    *Policy Question.*

In 1972, the United States withdrew her recognition of the Republic of China – Taiwan – as a sovereign distinct from the People's Republic of China. Every president since Richard M. Nixon has avoided Taiwan's quarrels with China, including territorial disputes in the South China Sea.

To find that Harvest trespassed on Taiwan, the court would have to conclude that (a) Taiwan is a nation capable of having a territorial claim and (b) it owns this portion of the South China Sea. Both of these determinations are matters constitutionally committed to other branches of government.

Of the executive, legislature, and judiciary, it is the executive that extends America's recognition to a foreign nation.[4] Absent an internal Constitutional irregularity, the judiciary has no authority to review the policy choices of the executive. This is not some humble deference to other branches; it is the structure by which the government was constituted in 1789.

5.    *Standing.*

These Taiwanese residents have standing to sue if (a) each of them have suffered an injury that was caused by Harvest and (b) their injury is capable of being redressed by a ruling.[5]

They have no injury – none that is recognized at law for they have no legally protected interest to injure. They concede that they do not own the field – the only source of an interest. Their grievance is also generalized; every citizen of Taiwan has the same interest in this area as any particular plaintiff.[6] The misbegotten character of their claim is illustrated by this 1/230,000th of the population's claiming the entire book value of the area – an amount untethered to their supposed suffering or even a *pro rata* share of their claim.

---

[4] Charles L. Williams v. Suffolk Insurance Company, 38 U.S. 415, 420 (1839); Republic of Vietnam v. Pfizer, Inc., 556 F.2d 892, 894 (1977).

[5] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

[6] United States v. Richardson, 418 U.S. 166, 179–80 (1974).

Assuming these people were injured, this court cannot redress them because it cannot prevent China from exploring the South China Sea. Although the claims are nominally addressed to Harvest, they are really complaining about China's aggressive assertion of territorial claims at sea.

During the pendency of this case, China has stopped using Harvest to explore the WAB-21 field. Enjoining China's former agent, Harvest, will not stop China from searching for oil itself or hiring another company to do so.

No injury: neither Harvest nor Crestone has drilled a well – much less produced oil from WAB-21.

These residents of Taiwan do not have standing to sue Harvest.

6. *Wrong Party.*

The plaintiffs have sued Harvest Natural Resources, Inc. – the wrong party. Harvest has never had a direct interest in WAB-21. China dealt with its subsidiary, Crestone. For a suit to exist, the correct people must have a claim at law and must join the precise people who did the acts that hurt them. The plaintiffs should not have sued at all, but Harvest is categorically the wrong target.

7. *Discovery.*

One year after this case began and eight months after it was fully briefed, the plaintiffs moved to discover to whom Harvest sold its interest in the field. The problem with these claims is not whether Harvest owns the field; it is that these plaintiffs concede that they do not own it. Because their claims are fundamentally flawed in several ways, the discovery will be denied. Having failed to sue the proper party last year, they want Harvest to help them sue another wrong party. No.

8. *Conclusion.*

This case has nothing to do with Harvest or the United States. A group of Taiwanese citizens are attempting to profit from their country's precarious position in a sea claimed by a powerful neighbor. The island of Formosa – as it had been historically known to the West – has been claimed by its aboriginal people, of course, and then by a succession of governments: Portugese, Spanish, Dutch, Japanese, and competing Chinese ones.

It is understandable that the people of Taiwan may be frustrated with forty years of these unresolved territorial disputes. It is not understandable that an American lawyer would demand $2.9 million from a parent company of a licensee of China for the sole benefit of a cluster of Taiwanese citizens and himself.

These Taiwanese citizens will take nothing from Harvest Natural Resources, Inc.

Signed on August 8, 2014, at Houston, Texas.

Lynn N. Hughes
United States District Judge